United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Tapestry, Inc., and others, Plaintiffs, <br><br> v. <br><br> 2012coachoutlets.com, and others, Defendants. | ) ) ) ) ) ) ) ) ) <br> Civil Action No. 17-24561-Civ-Scola |

### Order on Motion for Default Judgment

This matter comes before the Court upon Plaintiffs Tapestry, Inc., Coach IP Holdings LLC, Stuart Weitzman IP, LLC and Kate Spade LLC's motion (ECF No. 25) for entry of final default judgment against the Defendants.[1] A Clerk's Default (ECF No. 23), was entered against the Defendants on March 13, 2018. The Court has carefully considered the motion, the record, the relevant legal authorities, and is otherwise fully advised of the premises. For the following reasons, the Plaintiffs' motion (**ECF No. 25**) is **granted**.

### I.     Introduction

The Plaintiffs filed suit against the Defendants for trademark counterfeiting and infringement under 15 U.S.C. § 1114; cybersquatting under 15 U.S.C. § 1125(d); and common-law trademark infringement. (Compl., ECF No. 1.) The complaint alleges that the Defendants are promoting, selling, offering for sale and/or selling products bearing counterfeits of the Plaintiffs' registered trademarks within the Southern District of Florida through the Internet websites and supporting domain names identified in Schedule "A" ("Subject Domain Names"), including certain associated URLs identified in Schedule "B" of the Plaintiffs' motion.

In their motion, the Plaintiffs seek the entry of default final judgment against the Defendants on all counts asserted in the complaint. The Plaintiffs further request injunctive relief and statutory damages.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to

---

[1] The Defendants are the individuals, partnerships and unincorporated associations identified in Schedule "A" of this order.

plead in response to a complaint. "By defaulting, a defendant is taken to admit the well-pleaded allegations of fact in a plaintiff's complaint." *Under Armour, Inc. v. 51nfljersey.com*, No. 13–62809–CIV, 2014 WL 1652044, at *4 (S.D. Fla. Apr. 23, 2014) (Rosenbaum, J.). However, "a sufficient basis must still exist in the pleadings to state a claim before a court may enter a default judgment." *Id.* Upon a review of Plaintiffs' submissions, it appears there is a sufficient basis for the Court to enter default judgment in favor of the Plaintiffs.

## II. Factual Background

Plaintiff Tapestry, Inc. ("Tapestry"), offers for sale and sells goods under its Coach, Kate Spade, and Stuart Weitzman brands using the federally registered trademarks identified in Schedule "B" of the complaint (the "Tapestry Marks"). (Compl. ¶ 13, ECF No. 1.) Coach IP Holdings LLC, Stuart Weitzman IP, LLC, and Kate Spade LLC, the other Plaintiffs in this case, are subsidiaries of Tapestry. (*Id.* at ¶¶ 4–6.)

Tapestry has expended substantial time, money, and resources to develop, advertise, and otherwise promote the Tapestry Marks. (*Id.* at ¶ 21.) Authentic Coach, Stuart Weitzman and Kate Spade products have been recognized and exclusively associated with Tapestry by the fashion industry and the public. (*Id.* at ¶ 23.) These goods are widely advertised and promoted by Tapestry and authorized distributors via the Internet. (*Id.* at ¶ 24.) Tapestry's Coach website (www.coach.com), Stuart Weitzman website (www.stuartweitzman.com), and Kate Spade website (www.katespade.com) "each feature proprietary content, images and designs exclusive to their respective brands." (*Id.*)

The Tapestry Marks have been continuously used in interstate commerce and have never been abandoned. (*Id.* at ¶¶ 18–19.) The Tapestry Marks have "never been assigned or licensed to any of the Defendants in this matter." (*Id.* at ¶ 20.) At all relevant times, Defendants have been aware of the Tapestry Marks, including Tapestry's exclusive right to use and license such intellectual property and the goodwill associated therewith. (*Id.* at ¶ 26.) Defendants, through various commercial Internet websites and supporting domain names, advertised, promoted, offered for sale, or sold goods bearing counterfeit and infringing trademarks. (*See id.* at ¶ 27.) Several of the Defendants have also registered their respective domain names using marks that are nearly identical or confusingly similar to at least one of the Tapestry Marks. (*Id.* at ¶ 33.) These acts "are intended to cause, have caused, and are likely to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that products bearing counterfeits of the Tapestry Marks offered for sale and sold by

[the] Defendants are authentic or authorized products of Tapestry." (*Id.* at ¶ 39.)

## II. Analysis

### A. Claims

#### 1. Trademark Counterfeiting and Infringement under 15 U.S.C. § 1114 (Count I) and Common Law Trademark Infringement (Count III)

The Lanham Act imposes liability on any person who, without the consent of the registrant, uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a). To prevail on a trademark infringement claim, a plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) the defendant's mark is likely to cause consumer confusion. *See, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997). The Court's analysis for Florida common law trademark infringement is the same as under the Lanham Act. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004) (Cohn, J.).

#### 2. Cybersquatting under 15 U.S.C. § 1125(d) (Count II)

The Anticybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name that is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. *See* 15 U.S.C. § 1125(d). "To prevail under the ACPA, a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006); *see also Taverna Opa Trademark Corp. v. Ismail*, No. 08–20776–CIV, 2010 WL 1838384, at *2 (S.D. Fla. May 6, 2010) (Hoeveler, J.).

### B. Liability

The factual allegations of the Plaintiffs' complaint sufficiently allege the

elements for each of the claims described above. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate. The Plaintiffs seek injunctive relief and statutory damages for Counts I and II. The Plaintiffs do not seek independent or additional relief as to Count III.

The Court notes that the Court's rulings as to the ACPA claim (Count II) refer only to certain of the Defendants' domain names. Although the Plaintiffs allege in their complaint that "[s]everal Defendants have registered their respective Subject Domain Name(s) using marks that are nearly identical and/or confusingly similar to at least one of the Tapestry Marks (collectively the "Cybersquatted Subject Domain Names"))", ECF No. 1 at ¶ 33, and seek relief in Count II based on these and other allegations, the Plaintiffs do not identify which of the Subject Domain Names are in violation of 15 U.S.C. § 1125(d) in their complaint. In their motion, the Plaintiffs identify the "Cybersquatted Subject Domain Names" as those domain names identified in Schedule "B" of their motion, *see* ECF No. 25 at 15, which is a list of certain of the Defendants' domain names and associated URLs.

However, the ACPA does not refer to URLs and certain of the domain names referenced in Schedule "B" of the Plaintiffs' motion are not identical or confusingly similar to one of the Tapestry Marks. Moreover, certain of the domain names provided do not correspond with one of the Subject Domain Names in Schedule "A" of the complaint, which delineates the relevant domain names in this case, so the Court cannot grant relief based on those domain names. Accordingly, the Court concludes that only the domain names identified in Schedule "B" of this order were registered or used in violation of the ACPA.

### C. Injunctive Relief

The Plaintiffs request that the Court enter a permanent injunction and order that the Subject Domain Names be transferred to the Plaintiffs' control by Defendants, their registrars, and/or registries. (Mot., ECF No. 25 at 9.) Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). In fact, "injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (alterations and citations omitted) (Kehoe, J.). Injunctive relief is an available remedy even in default judgment cases. *See, e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222–23.

The ACPA also expressly empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(c); *see also Victoria's Cyber Secret Ltd. P'ship v. Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1356 (S.D. Fla. 2001) (King, J.) (ordering transfer of domain names in ACPA context).

Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of the Plaintiffs' rights. Certain Defendants have also acted with the bad-faith intent to profit from at least one of the Tapestry Marks and the goodwill associated with the Tapestry Marks by registering their respective domain names in violation of 15 U.S.C. § 1125(d).

Based on the Court's review of the record and relevant legal authorities, the Court grants the Plaintiffs' request. The Court orders that the Defendants, or relevant domain-name registrars or registries, transfer the applicable domain name(s) from Schedule "A" to the Plaintiffs as set forth below.

### D.   Statutory Damages

The Plaintiffs seek statutory damages under 15 U.S.C. §§ 1117(c) and (d). The Court has wide discretion to determine the amount of statutory damages. *PetMed Express, Inc.*, 336 F. Supp. 2d at 1219. Upon the Court's review, the Court finds the Plaintiffs' requests reasonable.

In cases involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) allows a plaintiff to elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 or more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). If the Court finds that a defendant's counterfeiting actions were willful, it may impose damages up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2).

An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *Under Armour, Inc.*, 2014 WL 1652044, at *7. The Court "may award statutory damages without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1263 (S.D. Fla. 2016) (Bloom, J.) (internal citations and quotation marks omitted). "Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain." *Under Armour, Inc.*, 2014 WL 1652044, at *7; *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (stating that statutory damages are "specifically appropriate

in default judgment cases due to infringer nondisclosure").

Here, the allegations in the complaint establish that the Defendants are entitled to statutory damages under 15 U.S.C. § 1117(c). Further, the Defendants have defaulted on the Plaintiffs' allegations of willfulness. *See Arista Records, Inc. v. Beker Enter., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (Cohn, J.) So, the Court may award up to $2,000,000.00 per infringing mark per type of good in this case. The Plaintiffs seek statutory damages of $500,000.00 per Defendant and the Court finds that this amount falls within the permissible statutory range and is just. *PetMed Express, Inc.*, 336 F. Supp. 2d at 1220-21 ("Statutory damages under § 1117(c) are intended not just for compensation for losses, but also to deter wrongful conduct.") Therefore, the Plaintiffs shall be awarded $500,000.00 per Defendant.

Additionally, the Plaintiffs "may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just" for a violation of 15 U.S.C. § 1125(d). 15 U.S.C. § 1117(d). Plaintiffs seek statutory damages in the amount of $10,000.00 for each of domain name registered in violation of the ACPA. (Motion, ECF No. 25 at 15–18). The Court finds that this amount is reasonable and awards $10,000.00 for the domain names identified in Schedule "B" of this order.

### E. Other Relief

The Plaintiffs also request permission to disable the URL www.noticeoflawsuit1.com created by the Plaintiffs pursuant to the Court's January 31, 2018 Order Granting Preliminary Injunction (ECF No. 12). The Court grants the Plaintiffs permission to do so as set forth below.

### III. Conclusion

Accordingly, the Court **grants** the Plaintiffs' motion (**ECF No. 25**). It is hereby **ordered and adjudged** that:

1. Defendants and their officers, agents, servants, employees and attorneys, and all persons acting in concert and participation with them are hereby permanently restrained and enjoined from:
   a. manufacturing or causing to be manufactured, importing. advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods bearing the Tapestry Marks;
   b. using the Tapestry Marks in connection with the sale of any unauthorized goods;

c. using any logo, and/or layout which may be calculated to falsely advertise the services or products of the Defendants offered for sale or sold via the Internet websites operating under the domain names identified in Schedule "A" and/or any other website, or business, as being sponsored by, authorized by, endorsed by, or in any way associated with the Plaintiffs;
d. falsely representing themselves as being connected with the Plaintiffs, through sponsorship or association;
e. engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants offered for sale or sold via the Subject Domain Names and/or any other website, domain name, or business, are in any way endorsed by, approved by, and/or associated with Plaintiffs;
f. using any reproduction, counterfeit, copy, or colorable imitation of the Tapestry Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by the Defendants via the Subject Domain Names and/or any other website or business;
g. affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by the Defendants via the Subject Domain Names and/or any other website, domain name, or business, as being those of the Plaintiffs or in any way endorsed by the Plaintiffs;
h. using the Tapestry Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, or operated by the Defendants, including the Internet websites operating under all of the Subject Domain Names; and
i. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

2. The Subject Domain Names are hereby ordered to be immediately transferred by the Defendants, their assignees and/or successors in interest or title, and the Registrars, to the Plaintiffs' control. To the extent the current Registrars do not facilitate the transfer of the domain names to Plaintiffs' control within five (5) days of receipt of this judgment, the Registries shall, within thirty (30) days, change the Registrar of Record for the Subject Domain Names to a Registrar of Plaintiffs' choosing, and that Registrar shall transfer those Subject Domain Names to Plaintiffs.

3. Upon the Plaintiffs' request, the top-level domain (TLD) Registry for each of the Subject Domain Names, or their administrators, including backend registry operators or administrators, within thirty (30) days of receipt of this order, shall place the Subject Domain Names on Registry Hold status for the life of the current registration, thus removing them from the TLD zone files maintained by the Registries which link the Subject Domain Names to the IP addresses where the associated websites are hosted.

4. The Plaintiffs may disable the website (www.noticeoflawsuit1.com) they created to publish copies of all documents on file in this action no sooner that 120 days following entry of this order.

5. The Plaintiffs are awarded $500,000.00 against each Defendant pursuant to 15 U.S.C. § 1117(c).

6. The Plaintiffs are awarded $10,000.00 per the domain names identified in Schedule "B" against the applicable Defendants pursuant to 15 U.S.C. § 1117(d).

7. The Plaintiffs are awarded interest from the date of this order pursuant to the provisions of 28 U.S.C. § 1961.

8. The Court retains jurisdiction to enforce this judgment and permanent injunction.

9. The Clerk is directed to release the bond posted by the Plaintiffs in the amount of $10,000.00 (ECF No. 9).

10. The Clerk is directed to **close** this case.

**Done and ordered**, in chambers, in Miami, Florida, on August 6, 2018.

Robert N. Scola, Jr.
United States District Judge

## SCHEDULE "A"

## DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME

| Defendant Number | Defendant / Domain Name |
|---|---|
| 1 | 2012coachoutlets.com |
| 2 | Cheapcoachoutlet.net |
| 2 | Cheapercoachoutlet.net |
| 3 | Classicbagonline.com |
| 4 | Classicbagssell.com |
| 5 | Classicbagsonlinesale.com |
| 6 | Coach--outlet-online.org |
| 7 | Coach-factoryoutlet-online.us.com |
| 8 | Coach-outlet-online.com |
| 9 | Coach-outlet.net |
| 10 | Coachbags-outlet2017.org |
| 11 | Coachbags2017.com |
| 12 | Coachbagsforcheap.com |
| 12 | Coachoutletonline2017.com |
| 13 | Coachbagsell.com |
| 14 | Coachbagsofficialsite.net |
| 15 | Coachbagsonclearance.com |
| 15 | Coachoutletonline2017.com |
| 16 | Coachbagusoutlet.com/ |
| 17 | Coachbagxen.com/ |
| 18 | Coachblacksales.com |
| 19 | Coachcoachtaiwan.com |
| 20 | Coachhandbagsshop.us.com/ |
| 21 | Coachoutlet-inc.net |
| 22 | Coachoutlet-site.com |
| 23 | Coachoutletofficial.us.com |
| 24 | Coachoutletonline-factory.us.com |
| 25 | Coachbagsonsaleoutlet.com |
| 25 | Coachoutletonline2017.com/ |
| 26 | Coachoutletonlinecoachfactoryoutlet.com |
| 26 | Coach-factoryoutletclearance.us.com/ |
| 27 | Coachoutletonlineestoresinc.com |
| 28 | Coachoutletonlineshop.com |
| 29 | Coachoutlets.us.org |
| 30 | Coachoutletsale.net |
| 30 | Cheapercoachoutlet.net |
| 31 | Coachoutletsstore.net |

| 32 | Coachoutletstoress.us.com |
|---|---|
| 33 | Coachoverbags.com |
| 34 | Coachsaleus.com |
| 35 | Coachuscom.com |
| 36 | Craftsbagdiscounts.com |
| 37 | Craftsmanshipstore.com |
| 38 | Fashionbagsell.com |
| 39 | Hotbagsstore.com |
| 40 | Katespade-outlet.us.org |
| 41 | Katespadeous.com |
| 42 | Katespadeoutletstore.us.org |
| 43 | Katespadeoutletsus.com |
| 44 | Katespadeoutletuk.co.uk |
| 45 | Katespadesen.com |
| 46 | Katespadewen.com |
| 47 | Katespadexen.com |
| 48 | Katespadexus.com |
| 49 | Nystyleshop.com |
| 50 | Ofcoachoutlet.com |
| 51 | Online-coachbags.com |
| 51 | Cheapercoacchoutlet.net |
| 52 | Shangpin.com/women/brand/katespade |
| 53 | Shopcoach.us |
| 54 | Stuartweitzmanheels.com |
| 55 | Stuartweitzmanoutlet.store |
| 56 | Topclassicalshop.com |
| 57 | Topestcraft.com |
| 58 | Topsclassicalart.com |
| 59 | Vnhline.com |
| 60 | Zcoachoutlet.com |

**SCHEDULE "B"**

| Defendant Number | Domain Name |
|---|---|
| 1 | 2012coachoutlets.com |
| 2 | cheapcoachoutlet.net |
| 8 | coach-outlet-online.com |
| 9 | coach-outlet.net |
| 10 | coachbags-outlet2017.org |
| 11 | coachbags2017.com |
| 12 | coachbagsforcheap.com |
| 13 | coachbagsell.com |
| 14 | coachbagsofficialsite.net |
| 15 | coachbagsonclearance.com/ |
| 16 | coachbagusoutlet.com |
| 17 | coachbagxen.com |
| 18 | coachblacksales.com |
| 19 | coachcoachtaiwan.com |
| 20 | coachhandbagsshop.us.com |
| 21 | coachoutlet-inc.net |
| 22 | coachoutlet-site.com |
| 23 | Coachoutletofficial.us.com |
| 24 | coachoutletonline-factory.us.com |
| 25 | coachoutletonline2017.com |
| 26 | Coachoutletonlinecoachfactoryoutlet.com |
| 27 | Coachoutletonlineestoresinc.com |
| 28 | Coachoutletonlineshop.com |
| 29 | Coachoutlets.us.org |
| 30 | coachoutletsale.net |
| 31 | Coachoutletsstore.net |
| 32 | Coachoutletstoress.us.com |
| 33 | Coachoverbags.com |
| 34 | Coachsaleus.com |
| 35 | Coachuscom.com |
| 40 | Katespade-outlet.us.org |
| 41 | Katespadeous.com |
| 42 | Katespadeoutletstore.us.org |
| 43 | Katespadeoutletstore.us.com |
| 44 | Katespadeoutletuk.co.uk |
| 45 | Katespadesen.com |
| 46 | Katespadewen.com |
| 47 | Katespadexen.com |
| 48 | Katespadexus.com |

| 50 | ofcoachoutlet.com |
| --- | --- |
| 51 | online-coachbags.com |
| 53 | Shopcoach.us |
| 54 | Stuartweitzmanheels.com |
| 55 | Stuartweitzmanoutlet.store |